(No. 36822.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MCGREGOR, Plaintiff in Error.

*Opinion filed November 30, 1962.*

WAYNE R. HANNAH, JR., of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

We have issued a writ of error to review a judgment of the criminal court of Cook County entered upon a jury verdict finding the defendant, John McGregor, guilty of the crime of murder and fixing his punishment at 15 years imprisonment.

The first contention advanced by the defendant is that the evidence was insufficient to establish his guilt beyond a reasonable doubt. A police officer testified that he went to an apartment where he found the body of one Doris Kyles with a stab wound in her breast. The officer had a conversation with the defendant shortly thereafter in which the defendant said that he had discovered the body when he went to call on the deceased. The defendant said that he had then gone to his brother's home and told his brother what he had seen and he and his brother went back to the apartment after which they notified the police. The officer had another conversation with the defendant a few hours later at the police station, at which time the defendant said that he first went to the de-

ceased's apartment at about 5 :30 P.M. but left there shortly after he had arrived and went to a liquor store and a restaurant where an acquaintance offered to buy him some drinks. He said that he had left the restaurant and returned to the apartment to get his coat and that he then discovered the deceased's body. After making this statement the defendant was released.

He was arrested at about 2 :30 the following afternoon and gave another statement substantially similar to the previous one. At about 3 A.M. on the following day the defendant gave another statement to the police. In that statement the defendant said that at about 4 :30 P.M. he went to his sister's apartment to see his sister. She was not home and Doris Kyles was baby-sitting for the defendant's sister. The defendant went into the bathroom and the deceased commenced arguing with the defendant through the closed bathroom door. When the defendant came out of the bathroom the deceased came at him with a butcher knife. Defendant then drew his own knife and the deceased told the defendant that she was just playing with him and threw the knife on the table. The defendant picked up the butcher knife and threw his own knife behind the refrigerator. He then grabbed the deceased and held the butcher knife to her chest and told her she had better watch out because she could get hurt. The deceased whirled around and the defendant's hand hit the door and slipped off the knife. The deceased screamed and ran into the other room where she fell down. The defendant ran into the other room, pulled the knife out of the deceased's body, wrapped the knife in the deceased's coat and ran out of the building. He burned the coat in a garbage can near the apartment and then went to a nearby restaurant where he stayed for a few minutes and then went back to the apartment, got his coat and went to his brother's house. He threw the butcher knife away near his brother's house and then went in and told his brother what had happened. He and his brother and his brother's wife all returned.

to the apartment where the deceased had met her death and they then notified the police.

The defendant gave another statement to an assistant State's Attorney which was practically identical with the one we have just discussed. Both statements were introduced at the trial over the defendant's objections.

The only evidence offered by the defendant was the testimony of two police officers that they found the defendant's knife behind the refrigerator and found the butcher knife in a yard near the defendant's brother's house.

We think there can be no question but that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt. The defendant admitted killing the deceased but contends that the killing was accidental. This contention cannot be sustained. Even if defendant's statements be accepted as entirely true, they were sufficient to prove him guilty of murder. Where death results in the commission of an unlawful act, the natural consequence of which is the destruction of human life, the crime is murder. (Ill. Rev. Stat. 1959, chap. 38, par. 363.) Defendant admitted that he seized the deceased and held a knife at her breast. She was killed in an attempt to elude his grasp. These facts are similar to those in *People* v. *Jersky,* 377 Ill. 261, where the defendant claimed that the deceased was accidentally killed during the course of a struggle for a gun. We upheld the murder conviction and pointed out that even if the defendant's story were believed, it would not help his position since he had no business on the deceased's property, threatening him with a gun. In the present case, the defendant had no business threatening the deceased with a knife and cannot escape the consequences of his act by a claim of accident.

The defendant also claims that his statements should not have been admitted in evidence. He claims, first, that the court improperly restricted his right to cross-examine one of the witnesses to the statements. The record does not sup-

port the defendant's claim for it shows that the court told counsel for the defendant that he was giving him the opportunity for further cross-examination on the statement. Counsel did not see fit to take advantage of his offer and defendant cannot now complain that the court restricted his right of cross-examination.

The defendant also contends that the statements were inadmissible because the State did not furnish him with a list of the witnesses present at the time the statements were made. The record shows that at the arraignment, the prosecution furnished the defendant with a list of the witnesses present at the time defendant gave his statement to the police. There were three persons named as witnesses to that statement, but at the trial, the evidence showed that only two of these witnesses were actually present. Defendant contends that this discrepancy rendered the statement inadmissible. We do not agree. Defendant makes no contention that the statement was involuntary and he could not have been prejudiced by reason of the fact that the list of witnesses included the name of a person not actually present. Furthermore, the trial court offered to call the third person whose name was listed, so that defendant's counsel could cross-examine him, but counsel declined the offer. We are of the opinion that the defendant's objection to this statement is not well grounded.

As to the statement given to the assistant State's Attorney, the defendant contends that this statement was inadmissible because a copy thereof was not furnished to him at the arraignment as provided by statute. (Ill. Rev. Stat. 1959, chap. 38, par. 729.) The record shows that at the arraignment the prosecution furnished the defendant with a copy of the statement given to the police and asked defense counsel if he would stipulate that the State could furnish a copy of the State's Attorney's statement prior to trial. Counsel for the defendant agreed to this stipulation and the statement was furnished to defendant on the day of the

trial prior to the commencement of the trial. In view of counsel's stipulation the statement was properly admitted in evidence in spite of the fact that a copy thereof was not furnished to the defendant at the arraignment.

The defendant's final contention is that the court erred in giving an instruction advising the jury that they had no right to disregard evidence of any confession made by the defendant. The defendant contends that this instruction improperly assumed that defendant's statements were confessions. We find it unnecessary to consider this contention since the record shows that all of the instructions were given by agreement between the State and the defendant.

Our review of the record satisfies us that the defendant received a fair trial and that his guilt was established beyond a reasonable doubt. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*