## People of the State of Illinois, Defendant in Error, v. Robert Cage, Plaintiff in Error.

**Gen. No. 50,179.**

First District, Second Division.

May 4, 1965.

Rehearing denied June 1, 1965.

264

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, William J. Moran, and Frederick F. Cohn, Assistant Public Defenders, of counsel), for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE LYONS delivered the opinion of the court:

On November 26, 1934, Robert Cage, was convicted of murder and sentenced to a term of 99 years in the penitentiary. Defendant brings this writ of error for a review of the record.

On the evening of September 9, 1934, George Torres and Charles Harakopas, the deceased, worked in a candy store at 4701 South State Street. Torres testified for the State that he and the deceased were clerks in the candy store; that at about 1:00 a. m. defendant came in and asked the deceased for cigarettes; that one minute later the codefendant, Edward Smith, walked in, pointed a gun at him (Torres) and told him to "stick 'em up"; that defendant pointed a gun at the deceased and then walked behind the cigar counter and struck the deceased with his fist; that the deceased backed out from behind the cigar counter and defendant followed him with the gun, facing him and walking towards him; that the deceased backed up some

more and then turned toward the rear of the store; that defendant, still following the deceased struck him with his fist once or twice and then shot him twice; and that at the time the shots were fired the codefendant Smith was taking money out of the cash register.

Torres further testified that he next saw defendant and his codefendant on Monday, September 24, 1934, in a lineup at the Wabash Avenue Police Station and that he saw them again on September 26, 1934, in the Captain's office in the same police station, together with some police officers and the prosecutor. The prosecutor asked Torres if defendant and his codefendant were the men present in the store, and he said they were. The prosecutor then asked him if he saw the man who did the shooting and he replied, "Robert Cage." He also stated that the two defendants did not say anything. Torres concluded his testimony on direct examination by stating that he had been a witness at the Coroner's Inquest about two days after the shooting, and at the inquest, in response to the question of whether or not he could identify the two men, Torres answered, "I don't know whether I could or not . . . ."

On cross-examination Torres testified that on Monday, September 24, 1934, he went to the Wabash Avenue police station at about 1:00 o'clock in the afternoon; that he was taken back to a cell room where he saw nine or ten men lined up facing him with their backs to the bars; that there were police officers with him at the time; that he did not remember who the police officers were or how many were present and didn't know whether any of them were present in the courtroom; that he saw Cage there at that time; that Cage did not say anything to anybody at that time; and that after looking at the men in the lineup for approximately fifteen minutes he (Torres) left with the police officers. Torres further testified on cross-

examination, that two days later, on September 26, 1934, at about 1:00 p. m., the police took him to the Captain's office in the Wabash Avenue police station; that he was told that the State's Attorney wanted to see him; that when he arrived there, the prosecutor and some police officers were present; that the prosecutor questioned him about half an hour before defendant and codefendant were brought in handcuffed; and that he did not remember what questions the prosecutor asked before the defendants were brought into the room.

Four witnesses were permitted to testify during the prosecution's case in chief, that they had seen the defendants together in their places of business on other occasions, on dates after the shooting. The arresting officer testified that when Torres identified the defendants in the Captain's room on the 26th, they remained silent. On cross-examination he testified that the defendants had been arrested on September 22, 1934, and had denied the crime at all times.

Defendant's theory of defense was alibi. He presented evidence that he was playing cards in the apartment of a friend until shortly before 1:00 a. m. on September 9, 1934. He further testified that the prosecutor would not let him speak at the time he was identified by Torres. During his examination in chief, defendant was not asked whether he knew his codefendant, Edward Smith, or one John Myrick. On cross-examination he answered, over objection, that he did not know either man. He also denied knowing the four merchants who had testified that they had seen the defendants together in their stores and he further denied that Myrick, Smith and himself were together, in their respective stores.

In rebuttal, the prosecutor had John Myrick brought into the courtroom. Three of the merchants again testified that Myrick and the two defendants were

267

together, in their respective stores, on the dates previously mentioned by them. Motions to strike the testimony of each witness and instruct the jury to disregard it were denied. The jury found the defendants guilty of murder and sentenced each of them to 99 years in the penitentiary.

For an intelligent and understandable consideration of this case, we believe that a chronological background leading to its present status will aid in comprehending the reasons for the long delay involved in this appeal.

## CHRONOLOGY

1. Indictment No. 74427 charged petitioner Robert Cage and one Edward Smith with the murder of one Charles Harakopas on September 9, 1934.
2. On November 9, 1934, the jury found both defendants guilty of murder and fixed the punishment of each to a term of 99 years in the penitentiary.
3. On May 14, 1946, the defendant, Robert Cage, and Edward Smith filed a writ of error pro se, in the Supreme Court of Illinois, on the common law record. Judgment of conviction was affirmed for the reason that a bill of exceptions was not included in the record. The Supreme Court of the United States thereafter denied certiorari.
4. On August 18, 1952, Edward Smith filed a petition under the Post Conviction Hearing Act. (PC No. 333)
5. In December 1952, the defendant, Robert Cage, filed a petition for writ of error under the Post Conviction Hearing Act. (PC No. 368)
6. On July 30, 1953, Judge Covelli sustained the Post Conviction petition of Edward Smith and

granted him a new trial, commenting as follows:

The Court: Tell Mr. Austin he should have an expression from the Supreme Court in this case. I am convinced justice would be better served. The man was denied a fair trial. The State even concedes that.

The Court permitted the State at at the original trial to show offenses which were committed subsequent to the offense for which he was being tried.

All the Supreme Court decisions state that is a denial of his constitutional rights to the presumption of innocence.

7. On July 13, 1953, Judge Wendell E. Green denied Robert Cage relief in Post Conviction No. 368, and defendant was remanded to the penitentiary.
8. Both decisions were appealed, and both decisions were affirmed.
9. Sometime thereafter, on motion of the State, an order of nolle prosequi was entered as to Edward Smith in Indictment No. 74427. Smith was set at liberty.
10. On December 6, 1954, the Supreme Court of the United States denied certiorari in Cage v. Illinois, No. 62 Misc, October Term, 1954.
11. On April 23, 1956, the Supreme Court of the United States filed its decision in Griffin v. Illinois, 351 US 12. (Indigent defendants should be supplied with a transcript).

269

12. September 26, 1956, Rule 65–1 (Providing for transcript of evidence be supplied to indigent defendants became effective).

13. Prior to March 1, 1957, petitioner's petition for transcript under Rule 65–1 was denied because the Official Shorthand Reporter who took the notes at his original trial was dead.

14. Petitioner then forwarded the transcript of his original trial (which had been an exhibit in both the Smith and Cage post conviction hearings) to the Clerk of the Criminal Court of Cook County for certification by the trial judge; Judge Hugo M. Friend certified it. It was thereafter filed with the Clerk of the Criminal Court and then it disappeared and has never been found.

15. In 1962, a copy of the transcript was found in the office of the Clerk of the Supreme Court of the United States. (Apparently it had been filed with the Supreme Court of the United States when certiorari was denied in October 1954). A photostatic copy was obtained, certified to by Judge Hugo M. Friend, and filed with the Clerk of the Supreme Court of Illinois.

16. August 13, 1963, petitioner filed 15 copies of brief and abstract, on the writ of error in Supreme Court of Illinois.

17. May 21, 1964, the Supreme Court of Illinois entered an order that the writ of error under Rule 65–1 was barred by a common law 20 year Statute of Limitation.

18. July 6, 1964, Petition for rehearing was filed with Clerk of Supreme Court of Illinois.

19. On rehearing the Supreme Court of Illinois ruled that the case should be heard on the merits. Subsequently the case was transferred to this court for review on the merits.

Defendant's theory of the case is:

(1) that the State failed to prove defendant guilty beyond a reasonable doubt;
(2) the court erred in instructing the jury;
(3) the court erred in admitting evidence of other crimes.

At the outset, the State maintains that points one and three are not open to review because, one, they were not listed in defendant's written motion for a new trial and two, they are res judicata because of the judgment entered against defendant in the 1953 Post Conviction Proceeding which was subsequently affirmed by the Illinois Supreme Court.

 In response to the State's contention that defendant has waived his right to a review of the record, it is true that where grounds for a motion for a new trial are stated in writing, a defendant is limited to a review of the errors alleged and all other errors are waived. People v. Touhy, 31 Ill2d 236, 201 NE2d 425 (1964). People v. Gratton, 28 Ill2d 450, 454, 192 NE2d 903 (1964). There are, however, reasons which compel us to reject the State's contention. The classic definition of waiver is enunciated in Johnson v. Zerbst, 304 US 458, 464 (1937) as "an intentional relinquishment or abandonment of a known right or privilege." We conclude, that in the case at bar, defendant did not intentionally waive his constitutional right to the presumption of innocence, nor to a fair and impartial trial. Another reason why we must reject the State's contention is that Supreme Court Rule 65–1(2) eliminated the jurisdictional barrier of certification of the bill of exceptions within 100 days under Rule 65. Still another reason is that the affirmative defense of the Statute of Limitations is moot, because the Illinois Supreme Court granted defendant's petition for rehearing and allowed this instant writ of error. Finally,

we disagree because the Illinois Supreme Court in People v. Burson, 11 Ill2d 360, 370, 371, 143 NE2d 239 (1957), stated:

> The Court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented.

Our Supreme Court has held that "it is always the duty of this court to examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt the conviction will be reversed." People v. Coulson, 13 Ill2d 290, 296, 149 NE2d 96 (1958).

We must also reject the State's contention that defendant's right to a review of the merits of this case is barred by the doctrine of res judicata. The State's argument, that we are attempting to relitigate the issues involved in the Post Conviction proceedings, is not valid. In memorandum Order No. 1684, the Supreme Court set forth the three issues litigated in PC No. 368:

(1) The State knowingly used perjured testimony to convict him.
(2) The State suppressed evidence which would have been favorable to petitioner.
(3) A statement was obtained from petitioner as a result of violence at the hands of the police.

The State maintains these points were decisive of the first issue raised by defendant, that he was not proven guilty beyond a reasonable doubt. We hold, however, that in the case at bar, defendant does not raise these points.

■ ■ The State also argues that the prior determination under the Post Conviction proceeding was decisive on all issues raised *or which could have been raised* and thus the third issue raised by defendant, that evidence of subsequent crimes was admitted to his prejudice, is barred from consideration by us. (Emphasis supplied.) People v. Lewis, 2 Ill2d 328, 118 NE2d 259 (1954). We agree that this is valid prevailing law, but it does not apply to defendant. People v. Lewis, was decided March 17, 1954. Griffin v. Illinois, 351 US 12 (1956) was decided April 23, 1956. Pursuant to that decision, Supreme Court Rule 65–1 (1) and (2) were adopted by our Supreme Court. People v. Griffin, 9 Ill2d 164, 137 NE2d 485 (1956), decided on September 26, 1956, held that a prisoner who had pursued his remedy under the Post Conviction Hearing Act, but who had not raised the issue presently under consideration, *was not barred by the doctrine of res judicata* because there was no conscious waiver. (Emphasis supplied.) That is the situation in the instant case, and we conclude defendant has a right to a review on the merits. Thus, we must examine this case on its merits on each of the three points raised by defendant.

■ ■ In answer to point one, the State maintains that defendant was proved guilty of murder beyond a reasonable doubt. In support of their position the State first asserts that George Torres positively identified defendant as the killer of the deceased. Defendant asserts that two days after the crime the witness, testifying at a Coroner's Inquest, expressed doubt as to his ability to identify the two men who had committed the crime. Defendant further asserts that sixteen days after the crime, the witness viewed the defendants in a line-up and failed to identify defendant Cage. From this evidence, defendant concludes there was no positive identification by Torres and the prin-

ciple that a positive identification by one witness is a sufficient basis for a conviction, enunciated in People v. Donald, 29 Ill2d 283, 286, 194 NE2d 227 (1964) is not applicable here. We do not agree with defendant's conclusion. Convictions are not set aside because of the absence of a line-up identification. A failure to select a defendant from a line-up affects only the weight of the identification. People v. Flowers, 14 Ill2d 406, 410, 152 NE2d 838 (1955). People v. Washington, 26 Ill2d 207, 210, 186 NE2d 259 (1963). Furthermore, there is uncontradicted evidence that Torres positively identified defendant in the Captain's room, and at the trial.

The State next asserts that defendant, after his arrest, admitted that he had pulled a job at 4701 South State Street on September 9, 1934. The State reasons that in effect defendant, by his testimony, admitted the robbery, but denied the murder. Furthermore, the State points out that both defendants, when accused by Torres, remained silent and that testimony of this admission by silence was admitted without objection. People v. Norman, 28 Ill2d 77, 79, 190 NE2d 819 (1963). People v. Boulahanis, 50 Ill App2d 440, 200 NE2d 372 (1964). Defendant contends that no admissions either express or implied by silence were rendered by them. Defendant contends the express admission was later explained away by the testimony of one Officer Norton who stated that defendant said, "No we didn't have anything to do with that." Defendant also contends that the alleged implied admission by silence was not an admission as he testified that he was told by the prosecutor not to talk. He alleges that he originally told the police he knew nothing about the matter and thus was under no duty to deny every statement made in his presence tending to incriminate him. The jury heard the evidence pertaining to the admissions and defendant's alibi and deter-

274

mined there was enough evidence to establish defendant's guilt beyond a reasonable doubt.

██ ██ Defendant's second point is that the court erred in instructing the jury. The State asserts that the record does not show by whom the instructions were tendered. The State reasons that a defendant cannot claim that instructions, which he submitted or which were submitted by stipulation, were erroneously given by the trial court. People v. McGregor, 26 Ill2d 239, 244, 186 NE2d 309 (1963). The State further reasons that a defendant cannot argue that instructions tendered by the prosecution were erroneously refused. Therefore, the State maintains that an essential prerequisite to the raising of an issue on the instructions given to the jury, is that the record shows by whom the instructions were tendered. The State concludes that the record is silent as to who tendered the instructions being questioned by the defendant and therefore any claim of error cannot be considered. People v. Squires, 27 Ill2d 518, 522, 190 NE2d 361 (1963). People v. Woodruff, 9 Ill2d 429, 440, 137 NE2d 809 (1957). People v. Kemp, 396 Ill 578, 582, 72 NE2d 855 (1947). Defendant concedes that the State correctly states the rule, but argues that it came into effect twenty-one years after this defendant's trial. Ill Rev Stats (1955), chap 110, par 67. Defendant's argument continues that in 1934 there was no requirement that the copies of the instructions indicate who tendered them; therefore, the rule cannot be applied to defendant. Ill Rev Stats (1933), chap 110, par 67. We agree with defendant that the rules prior to 1955 did not require that the instructions indicate who tendered them, but they did require the instructions to indicate who objected to them. Thus, there is no need to review the particular instructions in which error is alleged.

■ The State also challenges defendant's third point that the trial court erred in admitting evidence of other crimes. Defendant's contention is based on the fact that the State, in the presentation of their case, had four witnesses testify that they observed the defendants in their respective places of business within one week subsequent to the offense charged in the indictment. The State emphasizes that defendant, in point one, argued that he was not positively identified by Torres. The State maintains it used these four witnesses to identify the defendants together and also to show the scheme or pattern in which defendants operated. People v. Tranowski, 20 Ill2d 11, 16, 169 NE2d 347 (1960). We could question the relevancy of the identifications as they were about a week subsequent to the offense. We do not have to decide the issue, however, as defendant urges that greater error was committed by the trial court when three of the four witnesses testified in rebuttal to defendant's denial on cross-examination that he knew Smith prior to their arrest and his further denial that the defendants were in the stores together. Defendant cites People v. Geidras, 338 Ill 340, 170 NE 219 (1930), in which the court held that cross-examination of a witness should be confined to matters brought out on direct examination. In that case the defendant, on cross-examination, denied knowing his codefendant. That matter had not been brought up on direct examination. The State then impeached the testimony of the defendant on rebuttal by showing that they were together subsequent to the date of the offense. The State attempts to distinguish that case from the case at bar by showing that not only did the State, in Geidras, establish on rebuttal that the defendants were seen together subsequent to the crime, but also that defendant possessed a gun. We hold that Geidras is controlling in the instant situation.

276

■ ■ We submit that the testimony may have induced the jurors to believe that defendant had been engaged in other crimes. The ultimate question to be decided, however, is whether this testimony so prejudiced the rights of defendant that he did not receive a fair trial. We hold that the fact that the jury may have been induced to believe that subsequent crimes were committed by defendant, did not affect their verdict, as there was sufficient evidence introduced, other than the testimony of the store owners, to convict defendant of the offense charged. We also hold, however, that inasmuch as the jurors set the penalty, they might have considered the testimony of the store owners, to the detriment of defendant, and increased his sentence. Under the authority of Ill Rev Stats (1963), chap 38, par 121–9(b)(4), we have the power to reduce a sentence. We believe that under the circumstances presented in the record, that the sentence should be reduced to 70 years in the penitentiary. The judgment is modified by reducing the sentence to 70 years in the Illinois State Penitentiary and as modified is affirmed.

Judgment modified and affirmed.

BURKE, P. J. and BRYANT, J., concur.