People of the State of Illinois, Plaintiff-Appellee, v. Frank McGee, Defendant-Appellant.

**Gen. No. 50,121.**

First District, Third Division.

September 23, 1965.

Mark S. Lieberman, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph V. Roddy, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendant was convicted of the offense of attempt (robbery). The trial court, sitting without a jury, found the defendant guilty and sentenced the defendant to the Illinois State Penitentiary for a period of 3 to 5 years.

This appeal was originally taken to the Supreme Court of Illinois, which court transferred the matter here.

In support of the appeal the defendant contends that the defendant's confessions were not voluntary, that they were the result of physical violence administered by the police, and that they materially influenced the

finding of guilty. The defendant also contends that the State failed to satisfy the statutory requirement of furnishing defendant's trial counsel with a list of the names and addresses of all persons present when the oral confessions were made.

In order to decide the two points raised by defendant it will be necessary to set forth the evidence adduced at the trial.

At approximately 1:00 a. m. on November 17, 1962, police officer Serges Joseph, dressed in civilian clothes, was walking west on the north side of 63rd Street in Chicago while on duty with the Task Force Undercover Unit of the Chicago Police Department. Officers John Neary and William Struke were riding in an unmarked vehicle about ten feet behind Joseph, and Officers Pearson and Gomez were walking across the street intermittently drinking from a bottle. The State's testimony was that the defendant approached Officer Joseph and stopped him. As the defendant approached, Officer Joseph had an opportunity to observe his face at all times. When the defendant reached Officer Joseph, he had his right hand in his coat pocket. He pushed Joseph into a doorway and said, "This is a stick-up, I have a pistol, give me your money." The officer responded, "I ain't going to argue with you. I have my money in my left hand pocket." As the defendant attempted to withdraw the money from the officer's pocket the officer hit him across the chin with his left hand and then told him that he was a police officer, and that the defendant was under arrest. At this point the defendant started to struggle, and Officer Neary, who was about ten feet away, came to the aid of Joseph. After the defendant was subdued, he was put in the unmarked vehicle and taken to the Seventh District Station. After the defendant was subdued Joseph and Neary searched him and found no weapon of any kind on the defendant. Joseph had

36

told the defendant where the money was and raised his hands over his head.

Officer Joseph testified that after he first announced his office, he placed the defendant under arrest and after he first hit the defendant, a struggle ensued, whereupon Neary "busted out of the wagon" and came to his assistance; that they together subdued the defendant. Joseph also stated that he imagined he struck the defendant "many times" and that he did not stop to count them. He also testified that he "dropped a left hook right on him . . . right on the jaw." Also, that Neary struck him "just enough times to keep him subdued and get the cuffs on him."

Neary said there was a slight struggle and that Joseph hit the defendant once or twice before Neary got to him; that he did not think that Joseph hit him after he arrived on the scene. He also stated that the defendant had a few bruises when he took him to the Englewood Police Station. Neary denied that he hit the defendant.

The defendant testified that Joseph continued to beat him after the defendant was handcuffed; that some teeth were knocked out and that the defendant was thrown into the truck face down with his hands behind him.

Joseph denied that he had knocked out any of defendant's teeth but admitted that the defendant had lacerations and received first aid in the hospital.

The defendant further testified that Joseph said, "I didn't knock this guy out yet. I am going to knock him out now." That Joseph thereupon banged the defendant's head against the floor of the truck and beat the defendant on the back. The defendant testified that he then passed out.

Officer Neary testified further that while he was riding in the truck at the time of the attempted robbery Officer Joseph had his radio on and that Neary could

hear the conversation between Joseph and the defendant in the truck. Neary testified that the defendant said to Officer Joseph, "This is a stick-up, I have a pistol, give me your money." Neary also testified that Officer Joseph announced his office and placed the defendant under arrest, after which there was a slight struggle. When he (meaning the defendant) came swinging at Officer Joseph, Neary jumped out and helped Officer Joseph make the arrest.

Neary testified that he was with the defendant at the Seventh District Police Station at about 1:15 or 1:30 in the morning following the arrest. That Officers Joseph, Struke, Pearson, Alvin Weeks and Neary were present and that the defendant was also present. He did not testify to the conversation held at that time, however, Officer Joseph testified that after transporting the defendant to the Seventh District Station, Englewood Station, he asked the defendant why he did this and why he wanted to stick him up. The defendant then said, "I wanted your money." An objection was made to that testimony and defense counsel moved to strike it, for the reason that all of the witnesses that were supposed to have been present were not listed on the list of witnesses the State had given to defendant's previous counsel at the time of arraignment. The list contained the names of three police officers. The court properly sustained the objection. The names of the three persons which appeared on the list of witnesses were Serges Joseph, Roosevelt Pearson and John Neary, all of whom were police officers. The defendant contends that since the trial judge merely sustained the objection and did not act on defendant's motion to strike this confession that the trial court considered this confession in determining the guilt of the defendant. We do not think that this follows from reading the record. This case was tried without a jury. The motion to strike was in-

cluded in the defendant's objection to the confession. The court, after much discussion, said the following, after considering the statute relevant to required list of witnesses: "It doesn't say present to the oral statement. It says all persons present at the time of the oral statement. If there were other persons present that you haven't supplied a list, I will sustain the objection." This clearly indicates to us that the confession to which the objection had been made was no longer considered as part of the evidence by the court. The only objection made to this first oral confession was based upon a failure of the State to supply a list of witnesses which contained all of the persons present. No objection was made at any time by the defendant to any confession based upon police brutality or any evidence that the defendant was coerced or intimidated into making a confession.

■ The defendant then contends that because the defendant had been taken to a hospital to be administered to for his bruises, that the State was under a duty to prove by a preponderance of the evidence that the confessions were voluntary. At no time during the trial was any objection urged to a confession on the grounds that it was involuntary.

Officer Joseph then testified to a conversation had at 7:00 o'clock on the evening of November 17, 1962, which was, according to the record, approximately some seventeen hours after the arrest. Officer Joseph testified that he asked the defendant why he tried to rob him and the defendant stated, "I am sorry I did it, but I wanted that bread." At the time of this confession Officers Neary and Joseph were present. There was also another person locked up with the defendant at the time. An objection was made because the name of the other prisoner did not appear on the list of witnesses.

39

In the case of People v. Ikerd, 26 Ill2d 573, 578, 188 NE2d 12, the court, in commenting on section 1 of division XIII of the Criminal Code, (Ill Rev Stats 1963, c 38, par 729) said the following: "It is axiomatic that a statute must be construed in its entirety and in the light of its objectives. This particular section of the Criminal Code applies to confessions 'before any law enforcement officer'—not before codefendants and friends—and endeavors to make certain that defendant knows in advance of trial the names of those law enforcement officers, or their agents or employees, before whom he confessed." The failure to include in the list of witnesses the name and address of a cellmate in the jail did not make the confession inadmissible.

The defendant has cited the case of People v. Thomlison, 400 Ill 555, 81 NE2d 434, in support of his contention that the defendant's condition required clear and convincing proof that it was not produced by the action of the police officers, and that it had nothing whatever to do with the confessions. That case discloses that the court held a preliminary hearing on the question of the admissibility of the confession of the defendant Karrick, and also that his eyes were blackened, his lips split, three teeth knocked loose, his temple bruised and his neck red and swollen, and he could hardly stand up. That he was repeatedly threatened by the police and he testified that "after being beaten I finally said I would confess to murder or anything if they wanted me to." The defendant in the instant case did not at any time state that he confessed because of intimidation, coercion, police brutality, or that his confession was involuntary. On the contrary, he testified that he made no confession to the police.

The defendant also cites People v. Wright, 24 Ill2d 88, 180 NE2d 689. In that case the defendant testified

that during the more than three days which he was held by the police, he was beaten, threatened with bodily harm and death unless he confessed. He also testified that after a sleepless night punctuated by further beatings, he was ready to confess to anything to save his life which was constantly threatened. The court held in that case that the burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Here the admissibility of the confession was never questioned in the trial court on the grounds that it was coerced.

■ In People v. Byrd, 21 Ill2d 114, 171 NE2d 782, the court pointed out that a defendant making an allegation that a confession had been obtained by improper means, and therefore should not be admitted in evidence, has a right to a hearing to determine whether his confession is voluntary, and if the court determines that no improper means were used to extract a confession, the confession is admissible. In the instant case the defendant did not assert that his confession was involuntary and did not ask for a hearing on the question of whether it was obtained by coercion. As pointed out heretofore, this defendant denied he made any confession.

Defendant also cites the case of Lynumn v. Illinois, 372 US 528. In that case the defendant's testimony relating to the involuntariness of the confession was largely corroborated by the police officers who made the arrest. The police had there admitted that they told defendant that her children would be taken away from her if she did not do what the officers asked her to do, namely, confess to a sale of narcotics. At the trial she denied the sale. There did not appear, from the opinion in that case, that there was any question but that she was coerced into admitting a sale, and for that reason the case is not applicable here.

41

Officer Neary also testified to the confession made by the defendant at 7:00 o'clock on the evening of November 17, 1962, at the lockup in the presence of Officers Joseph and Neary and a cell mate of the defendant. He testified that he asked the defendant why he grabbed the officer and that the defendant said, "I just needed some money, that is all." The objection urged by trial counsel for the defendant at that time was that only Officers Joseph and Neary were present, and the list of witnesses contained the names and addresses of three persons, all police officers, who were present.

As was pointed out in the case of People v. McGregor, 26 Ill2d 239, 186 NE2d 309, the defendant could not have been prejudiced by reason of the fact that the list of witnesses included the name of a person not actually present.

The defendant also cites People v. Bradley, 30 Ill2d 597, 198 NE2d 809, in support of his contention that in a criminal case in which the evidence is closely balanced the court may consider errors that have not been properly preserved. From the evidence in this case we do not consider it a close case. True, the defendant denied that it was his intention to commit robbery, or attempt to commit robbery, and that he was only seeking to help Officer Joseph, who was carrying money in his hand, and wanted the defendant to call him a cab. The story given by the defendant on the witness stand was so improbable that the trial judge, in our opinion, could have decided this case in no other way.

We do not feel that the defendant has either preserved his right to question the involuntariness of the confession, or that the record supports the point that at the time the confession was made he was in any manner threatened or coerced.

· We now come to defendant's second contention, namely that the confession was inadmissible because defendant's trial counsel was not furnished with a list of the names and addresses of the witnesses.

Paragraph 729 of the Criminal Code (Ill Rev Stats 1963, c 38, par 729, since repealed) reads in part as follows:

> "Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this State by any person charged with any crime, a copy of such confession, if written, together with a list of the names and addresses of all persons present at the time such confession was made shall be given to the defendant or his counsel prior to arraignment, or at such later time as the court, in its discretion, may direct, upon motion by either the prosecution or defense at the time of arraignment. If such confession was not reduced to writing, then a list of the names and addresses of all persons present at the time the confession was made shall be furnished. If the confession is made between the arraignment and the time the case is set for hearing, such fact shall be grounds for a continuance of the case on motion of either party, and the confession shall thereafter be furnished as aforesaid.
>
> "No confession shall be admitted as evidence in any case unless the confession and/or list of names and addresses of persons at the time the confession was made is furnished as required by this Section . . ."

 At the time of the arraignment of the defendant on December 7, 1962, he was represented by counsel of his own choosing. On January 15, 1963, defendant's original counsel withdrew and the Public

43

Defender filed his appearance on January 22, 1963. The trial commenced on April 5, 1963. The purpose of paragraph 729 of the Criminal Code is to prevent surprise and afford an opportunity to the defendant to combat false testimony. (People v. Pelkola, 19 Ill2d 156, 166 NE2d 54; People v. Quevreaux, 407 Ill 176, 95 NE2d 62.) The requirement that a list of the names and addresses of all persons present at the time the confession was made shall be furnished to the defendant, or to his counsel, is mandatory. People v. DuPree, 26 Ill2d 320, 186 NE2d 237.

The State submitted a list in conformity with paragraph 729 of chapter 38 at the time of the arraignment of the defendant. The statute authorizes the giving of the list to defendant or his counsel. The list having been given to counsel for the defendant at the time of the arraignment satisfied the purpose of the statute, which is to give the defendant notice of the existence of a confession so that he is protected against surprise and unfairness in the preparation of his defense. It may have been that defendant's second counsel was taken by surprise, but nowhere in this record does it appear that the defendant was taken by surprise, or that any unfairness resulted from the State's failure to give second counsel another list of witnesses and their addresses. The statute does not require the State to give a list to each successive counsel which a defendant may have.

Defendant cited People v. O'Connell, 30 Ill2d 603, 198 NE2d 834. That case does not support defendant's contention. At the time of the first trial of that case, paragraph 729 of chapter 38, in so far as the tendering of a list of names and addresses of witnesses was concerned, was not effective, however, the statute became effective before defendant's rearraignment and second trial, and the State gave no notice of the confession and made no tender of a list of witnesses to defense

44

counsel until the voir dire examination of the jury at the second trial. Defense counsel admitted that he had read the testimony of the previous trial which disclosed the confession. He was also an associate counsel at the original trial. At the previous trial there was no testimony as to who the witnesses were who were present at the time of the confession. In the O'Connell case the defense had never received a list until a list was handed to the defense counsel during the second trial. The O'Connell case is not applicable to a situation where a list had been given to original counsel at the time of the arraignment of the defendant, because in the O'Connell case the defendant had no notice of the persons who were present at the time of the confession until handed a list of witnesses during the second trial.

 We are of the opinion that paragraph 729 of chapter 38 was complied with literally by the State in this case, and that the confession was properly admitted. Paragraph 729 of chapter 38 was a departure from the law as it existed prior to its enactment, and since that paragraph of the Criminal Code was strictly complied with at the time of the arraignment, it cannot be said that it was error for the court to admit the confession because substitute counsel later appeared for the defendant.

The defendant in this case was given a fair trial and was proven guilty of the charge of attempt robbery beyond a reasonable doubt. His record of a previous conviction for armed robbery was admitted into evidence in this case. We conclude the trial judge properly found the defendant guilty as charged.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.