[Crim. No. 5509.   Second Dist., Div. One.   Apr. 12, 1956.]

THE PEOPLE, Respondent, v. LOUIS COLONNA, Appellant.

John G. Thorpe and Roger M. Sullivan for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with a violation of Health and Safety Code, section 11500, a felony,

in that he "did willfully, unlawfully and feloniously have in his possession flowering tops and leaves of Indian Hemp (cannabis sativa)." It was also charged that on or about March 12, 1953, defendant was convicted of a violation of the aforesaid code section, a misdemeanor. Defendant pleaded not guilty and denied the prior conviction. By stipulation, the People's case was submitted on the transcript of the preliminary examination, with the reservation that both the prosecution and defense might submit further testimony. Defendant also reserved the right to object to any testimony contained in the transcript of the preliminary hearing. When the trial judge announced he had read the transcript, the defendant objected ". . . to the admission of any evidence or any testimony obtained by the officers as a result of their entry of Apartment No. 5 on the basis that it was an illegal search and seizure as is prohibited in the rule of evidence of the case of People versus Cahan." The objection was overruled, the court adjudged the defendant guilty and found the allegation of a prior conviction true. Subsequently the court ordered that its finding of the truth of the prior conviction be stricken, and defendant was sentenced to six months in the county jail. From the judgment of conviction he prosecutes this appeal.

Concerning the factual background surrounding this prosecution, the record reveals that on the evening of April 9, 1955, officers of the Los Angeles Police Department entered the premises of the Nineford Apartments in the city of Los Angeles. Officer O'Grady talked to the landlady and inquired as to who lived in apartment 5. The officers then went to that apartment. Officer O'Grady then "tried the handle (of the door) to see whether or not it would open," inserted a passkey, then "went straight through the (opened) door," and "charged in" the room.

Inside, Officer O'Grady first observed defendant seated on a divan, in front of a coffee table, where he then observed, ". . . six white wrapped paper cigarettes and a quantity of loose green leafy material and a paper bag containing some additional green leafy substance . . ." which was later analyzed and determined to be cannabis sativa (marihuana). The officer then said: "Well, Red, what about it?" Defendant replied: "Well, you got me, you got me. I am dead. . . ."

Officer O'Grady then searched defendant's person. Defendant ". . . reached in his right coat pocket and threw a cigarette down on the coffee table and then said, 'It is all mine. . . . Take me over. All of it belongs to me.'" The

cigarette was also analyzed and determined to contain marihuana. The search of the apartment continued.

Apartment No. 5 of Nineford Apartments was leased to one Joy Belle Sanzone, also known as Joy Belle Noble. Miss Sanzone was observed by Officer O'Grady, for the first time, a few seconds after his "charge" into the apartment. The officers then took defendant and Miss Sanzone to the Narcotic Division Station where the former freely and voluntarily executed a written confession.

Upon the conclusion of the People's case in chief, defendant rested his case without offering any testimony.

The sole question presented on this appeal is whether the evidence objected to was obtained in violation of the 4th Amendment to the Constitution of the United States, article I, section 19 of the Constitution of the State of California, and was therefore inadmissible under the exclusionary rule announced in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905].

The evidence disclosed that the arresting officers had no search warrant, no warrant of arrest for anyone, did not know whether the apartment was occupied at the time they "went straight through the door." No attempt was made by the prosecution to prove that the officers were in pursuit of a suspected law violator, or were acting on information or belief that required immediate action and precluded the possibility of obtaining a search warrant.

It is respondent's contention that appellant could not avail himself of the constitutional guarantees by reason of his status as a guest in the apartment. That in order to have standing enabling him to object to the admissibility of evidence seized during an unreasonable search, the objector must "at least be dwelling" in the premises illegally searched, and that one who is not the owner, lessee or lawful occupant of the premises searched cannot raise the question under the federal and state Constitutions of unlawful search and seizure.

However, this contention was rejected by the Supreme Court in the case of *People* v. *Martin*, 45 Cal.2d 755, wherein, at pages 759-761 [290 P.2d 855], the court stated:

*"The attorney general contends that since defendant disclaimed any interest in the premises searched and the property seized, his constitutional rights could not have been violated and that therefore he has no standing to challenge the legality of the searches and seizures.* (Citing cases.) We cannot agree with this contention.

"It is true that in *Goldstein* v. *United States,* 316 U.S. 114 [62 S.Ct. 1000, 86 L.Ed. 1312], the United States Supreme Court recognized that the rule is well established in the lower federal courts that only those whose constitutional rights have been violated may object to the introduction of illegally obtained evidence against them. In the light of that rule it held that the federal wire-tapping statute should not be interpreted as forbidding the use of wire-tap evidence against a person not a party to the conversation. It was careful to point out, however, that it had never decided that the rule applied in the lower federal courts with respect to unconstitutionally obtained evidence was correct. There are several United States Supreme Court decisions cited below, however, that are logically inconsistent with the rule applied in the lower federal courts, and it is impossible to reconcile that rule with the reasons that compel the exclusion of the evidence.

"Thus, the rule of the lower federal courts is based on the theory that the evidence is excluded to provide a remedy for a wrong done to the defendant, and that accordingly, if the defendant has not been wronged he is entitled to no remedy. (*Connolly* v. *Medalie, supra,* 58 F.2d 629, 630.)

"*In adopting the exclusionary rule, however, this court recognized that it could not be justified on that theory (People* v. *Cahan,* 44 Cal.2d 434, 443 [282 P.2d 905]), *and based its decision on the ground that 'other remedies have completely failed to secure compliance with the constitutional provisions on the part of police officers with the attendant result that the courts under the old rule have been constantly required to participate in, and in effect condone, the lawless activity of law enforcement officers.'* (44 Cal.2d at 445.)

"*This result occurs whenever the government is allowed to profit by its own wrong by basing a conviction on illegally obtained evidence, and if law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified. Moreover, such a limitation virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for the conviction of others by the use of the evidence illegally obtained against them.*

"*The United States Supreme Court has clearly recognized that the purpose of the exclusionary rule is not to provide redress or punishment for a past wrong, but to deter lawless*

*enforcement of the law.* 'The Government cannot violate the Fourth Amendment . . . and use the fruits of such unlawful conduct to secure a conviction. [Citation.] Nor can the Government make indirect use of such evidence for its case [citation], or support a conviction on evidence obtained through leads from the unlawfully obtained evidence. [Citation.] All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men.' [Citing cases.] In *McDonald* v. *United States,* 335 U.S. 451 456 [69 S.Ct. 191, 93 L.Ed. 153], it gave effect to this policy by reversing the conviction of both defendants although only the rights of one had been violated. It pointed out that had the evidence been returned to the defendant from whom it was illegally taken, it would not have been available for use against the other defendant, and held therefore that its admission was prejudicial as to both. [Citing cases.] It is true that in the McDonald case a pretrial motion for the return of the evidence by the defendant whose rights were violated had been erroneously denied. There is no basis for concluding, however, that a defendant whose rights have not been violated should have standing to challenge a pretrial ruling against his codefendant, if he has no standing to challenge the legality of the original seizure. In either situation his right to object to the use of the evidence must rest, not on a violation of his own constitutional rights, but on the ground that the government must not be allowed to profit by its own wrong and thus encouraged in the lawless enforcement of the law.

*"Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights."* (Emphasis added.)

▓ At the trial it was stipulated that the search as to the occupant of the apartment was unlawful, but that because appellant was a guest in the apartment his constitutional rights were held by the court not to have been violated. Upon the authority of, and for the reasons stated in *People* v. *Martin, supra,* it must be held that the court erred in overruling appellant's objection to the introduction of the evidence obtained in violation of his constitutional rights, and that the error was prejudicial.

The foregoing conclusions at which we have arrived render it unnecessary to consider or decide other issues presented on this appeal.

The judgment is reversed.

Doran, J., and Fourt, J., concurred.