**People of the State of Illinois, Plaintiff in Error, v. John DeFilippis, et al., Defendants in Error.**

**Gen. No. 49,646.**

First District, Third Division.
October 29, 1964.
Rehearing denied January 21, 1965.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel), for plaintiff in error.

R. Eugene Pincham and Charles B. Evins, of Chicago, for defendants-appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

The People seek a review of orders entered on motions of defendants, suppressing evidence which the state intends to use at the trial of the defendants who have been charged with the crimes of burglary and theft. A review by the Supreme Court was first invoked on the ground that debatable constitutional questions were involved with respect to the standing of the defendants to make the motions. The Supreme

Court transferred the case to this court. The vital issue in the case is whether the defendants had such a right to be in the premises searched and in the articles seized as to warrant their presenting the petitions in question.

The facts undisputed are that FBI agents without warrant entered a garage in the rear of premises at 7800 South Monitor Avenue, Oak Lawn, Illinois, and there arrested Caldarazzo, Young, Fletcher and Goberville and seized various articles alleged to be stolen property. Later the defendant DeFilippis appeared outside of the garage and was also arrested.

DeFilippis in his petition charges that FBI agents without his consent and without a warrant invaded the said premises on which his home is located and made an unlawful search; that he had a proprietary interest in his home and fenced-in premises where the search took place; and that the invasion and search was in violation of his rights as guaranteed by the Constitutions of the United States and the State of Illinois, and he prays that the evidence seized be suppressed.

The other defendants joined in a separate petition. They charge they were arrested by the police officers without warrant or due process of law and without any reasonable grounds for believing they committed any criminal offense; that "transistor radios were seized at that time in said garage," which they say will be offered in evidence by the state's attorney; that the seizure was in violation of their constitutional rights as hereinbefore set forth; and they pray that the evidence be suppressed.

No answer was filed by the state, which relied on People v. Elmore, 16 Ill2d 412, 158 NE2d 45. In that case the court held that if the allegations of a petition of the character here involved presented questions of fact, those questions must be resolved by a hearing at

139

which evidence is introduced, even though no answer had been filed, and that at such a hearing *the burden of proof is upon the defendant.* We must therefore examine the testimony of defendants in the instant case to determine whether they have sustained that burden of proof.

On the trial DeFilippis testified that he lived in a brick bungalow at 7800 South Monitor Avenue, Oak Lawn, Illinois, and that he owns the garage on the premises. He then testified:

> "I leased the garage to a Mr. Sam Cohn. I don't know where he lives. . . . He paid $25 rent each month, and he paid me for September, 1962 on September 1, 1962. He mailed me a money order every month. Any time he came by I would give him a receipt. He paid for September two or three days in advance."

■■ In Baumgardner v. Consolidated Copying Co., 44 Ill App 74, the court said "a lease is an agreement for exclusive possession." That right is paramount to that of the lessor, unless the lessor has reserved a right to himself. As there was no other disclosure by DeFilippis with respect to the lease, we must conclude from the evidence that the right to possess the garage was in a lessee and that DeFilippis had not reserved any right to possession for himself.

The defendant Fletcher was the only other witness for defendants, and his testimony detailed the arrest by the FBI agents and what occurred after that. He did not make an explanation, however, of the character of the defendants' possession of the premises at the time. He did not say that it was through DeFilippis, the owner, or Cohn, the lessee, of the garage. This is the substance of all the evidence for defendants on this phase of the case.

The agent Weatherwax testified for the state that he had been given an assignment to join the other agents, and that prior to that time he had learned from a fellow agent that a quantity of radios had been stolen and that among the stolen items were large wooden crates which were "in bond" shipments coming from Japan; that they had various markings on them. He and another agent drove to a point near the garage and observed the four defendants other than DeFilippis in the garage. Some were carrying cartons from the garage to a truck. "I could see they were wooden cartons which had 'made in Japan,' large stencilling on them, and they had wire bands on them." Also from his vantage point in an alley he could see into the garage and noticed some blue, green and orange cards scattered on the floor. After observing the defendants load the trucks, the FBI agents ran into the garage and arrested them, all except DeFilippis, who was arrested later.

Oitzinger, an FBI agent, testified he had received information that stolen goods were located in the garage. Among the goods were shirts consigned to Sears, Roebuck & Co. and a quantity of merchandise stolen from Carson, Pirie, Scott & Co.

■ ■ We do not see in the evidence any showing by these defendants of their right to possession or their right to be on the premises. Such a showing of standing is a prerequisite to establishing a right to suppress. People v. Kelley, 23 Ill2d 193, 177 NE2d 830. In that case, the court said, at p 196:

"We have held in numerous cases that where a defendant neither claims ownership or demands the return of the property alleged to have been illegally seized, he can not complain of the seizure or the introduction of the property in evidence

141

against him. (People v. Perroni, 14 Ill2d 581; People v. Gambino, 12 Ill2d 29; People v. Exum, 382 Ill 204.) Under the doctrine of these cases it is clear that the defendants lacked standing to raise the question of an alleged illegal search."

An exception to this rule, however, is where the offense charged is the unlawful *possession* of the goods seized. This was decided in Jones v. United States, 362 US 257, 4 L Ed2d 697, involving prosecution for violation of two statutory provisions. The court in its description of these charges, said at p 258:

"Both statutory provisions under which petitioner was prosecuted permit conviction upon proof of the defendant's possession of narcotics, and in the case of 26 USC, § 4704(a) of the absence of the appropriate stamps. Possession was the basis of the Government's case against petitioner."

The court recognized that if the defendant were required to prove standing in such case, it would mean an admission that he had committed the offense. Aware of this dilemma, the court held that it was not necessary for the defendant to prove standing. But where the crime charged, as in the instant case, does not rest on possession, the principle laid down in the Jones case does not apply.

People v. Mayo, 19 Ill2d 136, 166 NE2d 440, also cited by defendants, involved prosecution for the unlawful possession of policy slips, and the Supreme Court of Illinois held that in such a case the principle laid down in the Jones case applied.

Both the Jones and the Mayo cases were distinguished in People v. Kelley, supra, where the crime charged was armed robbery. The court said, at p 197:

"It is apparent that the conflict which is present in cases such as Jones and Mayo is not present here because the People are not here charging the defendants with possession of any articles taken in the search. The charge in the indictment is armed robbery and the articles allegedly taken in the search are only evidence of the defendant's guilt of that crime."

Defendants in the case before us rely heavily on Jones v. United States, supra, and we will therefore consider a second phase of that case relating to the type of possession that will support a petition to suppress. The defendant in the Jones case, in support of his petition, testified that the apartment which had been entered belonged to a friend who had given him the use of it "as a friend"; that he had a suit and shirt there; that he paid nothing for the use of the apartment; that he slept there "maybe a night"; and that at the time of the search his friend had been away about five days. The government contended that such an interest was not sufficient and sought to make a distinction with respect to various types of possessory rights. The court said it was not necessary nor desirable to consider distinctions in the character of the right to be on the premises, such as that of "lessees," "licensees," "invitees," or "guests," in the determination of the constitutional right to be free from unreasonable search and seizure and held that the showing of rightful possession by the defendant was adequate. In the instant case, the articles to be used in evidence were found in a garage leased by DeFilippis to Cohn, and no one but Cohn is shown to have any possessory right.

Petitioners cite People v. Bankhead, 27 Ill2d 18, 187 NE2d 705, some aspects of which resemble the Jones

case. The accused was a brother of the man who rented a hotel room in which the search for and seizure of narcotics was made. He was considered a guest, and the People, seeking to differentiate his status from that of one who had the right to possession, argued that the right of a hotel guest to use the premises was subject to the landlord's control and therefore the agent of the hotel owner had the right to open the defendant's door and admit the police officers who made the arrest. The court, following the Jones case, held that whatever right the hotel had to control access to a room does not include the authority to admit strangers without legal process and does not invest the landlord with the power to waive the constitutional rights of guests. It has no bearing on the issue before us, where the only possessory right was in the vague and absent Cohn.

Petitioners cite People v. Catavdella, Docket No. 38237–8–9, an opinion of the Supreme Court of Illinois rendered after briefs had been filed and oral argument had in the instant case. In Catavdella the state contended that the defendants lacked standing to make the motion to suppress. In reversing the judgment of conviction and holding that the trial court erred in overruling the motion to suppress evidence and that the defendants had standing to make such motion, the court said:

> "The motion to suppress alleged that the articles taken from the defendants' car were in the legal possession of the defendants at the time they were removed. This allegation was sufficient to give the defendants standing to challenge the search."

We see no relevance in this language to the instant case. An examination of the petition to suppress in the instant case shows that no allegation of legal possession of the goods seized in the garage was made.

██ ██ One final point remains to be considered. Defendants argue that the question of prior standing was not raised in the trial court and hence cannot be raised in this court. It is nevertheless an essential part of defendants' case. As we have hereinbefore said, in this type of proceeding it is not necessary to establish the issues by a formal answer to the petition. Defendants had the burden of proving all facts necessary to establish their standing. They failed to do so, and their motions should have been denied.

In their brief, counsel for defendants quoted at length from a number of cases, using upper case letters for emphasis. They failed to follow the order in the brief filed by appellant. In First Nat. Bank of Chicago v. Piaget, 2 Ill App2d 207, 119 NE2d 457, we said, at p 218:

> "A reviewing court is thrown into the midst of a problem, whether complicated or simple, with abrupt immersion. Counsel, in the preparation of their briefs, should bear this in mind and make it their first duty to clarify the issues and their position with respect to them. A psychological assault of upper-case artillery and a barrage of emphases serve only to distract and becloud."

The order is reversed and the cause is remanded with directions to deny the motions.

Order reversed and cause remanded with directions.

DEMPSEY and SULLIVAN, JJ., concur.

PETITION FOR REHEARING.

Our opinion was rendered in the above entitled cause on October 29, 1964. On November 16, 1964 the opinion of the Court of Appeals for the Third District in the

case of United States v. Konigsberg, 336 F2d 844 (3rd Cir, 1964), was published, revealing facts strikingly similar to the instant case. There the defendants were tried and convicted of unlawful possession or concealment of goods stolen in interstate commerce, involving the hijacking of men's suits. The suits were placed in a garage in New Jersey which was subsequently searched and the goods seized. One of the defendants, Zax, testified that he was the lessee of the garage on a month to month basis and that he in turn had leased the garage to one Joseph Pope. A motion to suppress was made by the defendants. The prosecution contended that none of the defendants had standing to challenge the search and seizure *as persons aggrieved.* Pope, the alleged lessee, was not produced at the trial. The court said (p 846):

> "None of the defendants, including Zax, had a then present possessory interest in the garage. The only one, according to Zax as a trial witness, who had the right at that time to use the building was the mysterious Mr. Pope to whom Zax said he had rented the premises for a week or two on January 4th, 5th, 6th, or 7th. . . . Beyond question if appellants were legitimately in the garage as invitees or guests of Pope as sublessee they might well have been under the Fourth Amendment umbrella. However, that is not the situation and, as above noted, there is no pretension that it is."

In the opinion we rendered in the instant case, we held that the only possessory right in the garage which was searched was in the vague and absent lessee Cohn whose address was unknown; that no one but Cohn had a possessory right, and that there was no evidence showing any right in the defendants derived from Cohn. It appears that in both cases reliance was placed on Jones v. United States, 362 US 257, 4 L Ed2d 697,

146

and that the effort to obtain shelter under the fourth amendment proceeded on almost the same factual basis in Illinois as in New Jersey.

Defendants in their petition for rehearing vigorously contend that the court was mistaken in its understanding of the Jones case; that in the Jones case possession of the goods was only evidence as in the instant case, and not the essence of the offense, and hence the Jones case cannot be distinguished on that ground from the case before us. We will clarify this understanding.

In the Jones case, the Supreme Court qualified the principle which had been applied by the lower federal courts for many years, that is, that to establish standing, a petition to suppress evidence must show that the petitioner owned or possessed the seized property or had a substantial interest in the premises searched. Jones was indicted on two charges: (1) that he "purchased, sold, dispensed and distributed" narcotics in violation of 26 USC, § 4704(a), that is, not in or from the "original stamped package," and (2) that under 21 USC, § 174, he "facilitated the concealment and sale of" the same narcotics, knowing them to have been imported illegally. The court made this pertinent observation on both of these charges (p 258):

> "Both statutory provisions under which petitioner was prosecuted permit conviction upon proof of the defendant's possession of narcotics, and in the case of 26 USC, § 4704(a) of the absence of the appropriate stamps. Possession was the basis of the Government's case against petitioner."

Again the court said (p 261):

> "To establish 'standing,' Courts of Appeal have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched."

147

The court, in describing the dilemma which faced the defendant, said (p 263):

"possession both convicts and confers standing. . . ."

and again, on the same page (263):

"Petitioner's conviction flows from his possession of the narcotics at the time of the search."

These statements clearly reveal that while the indictment in the Jones case did not make possession in itself the crime, the Supreme Court made clear that possession constituted the proof thereof.

In the light of these statements we do not construe Jones v. United States, supra, as applying to cases involving burglary and theft, even though such crimes always involve in some sense the possession of goods. Evidence of possession involving narcotics cannot be compared with evidence of possession of the type of merchandise involved in the instant case.

Our statement in the opinion, however, that the complaint in the Jones case involved prosecution for the possession of narcotic drugs is somewhat imprecise, and we have revised it by substituting, in lieu of the sentence beginning on the seventh line from the bottom of page 4 of the opinion, and reading:

"This was decided in Jones v. United States, 362 US 257, 4 L Ed2d 697, which involved a prosecution for the possession of narcotic drugs."

the following sentence:

"This was decided in Jones v. United States, 362 US 257, 4 L Ed2d 697, involving prosecution for violation of two statutory provisions. The court in its description of these charges said, at p 258: '[b]oth statutory provisions under which petitioner was prosecuted permit conviction upon proof of the defendant's possession of narcotics,

and in the case of 26 USC § 4704(a) of the absence of the appropriate stamps. Possession was the basis of the Government's case against petitioner.' "

and by adding the words "in such a case" after the word "standing," at the end of the fourth line from the bottom of page 4 of the opinion.

The petition for rehearing is denied.

Petition for rehearing denied.

DEMPSEY, P. J. and SULLIVAN, J., concur.