**People of the State of Illinois, Defendant in Error, v. Ronald Valentine (Impleaded), Plaintiff in Error.**

Gen. No. 50,064.

First District, Third Division.

June 17, 1965.

B. Michael Pallasch and Richard J. Brennan, of Chicago (Winston, Strawn, Smith & Patterson, of counsel), for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney of Cook County, Fred G. Leach and George W. Kenney, Assistant Attorneys General, Elmer C. Kissane and Lester A. Bonaguro, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, Ronald Valentine, was indicted for rape, tried without a jury, found guilty and sentenced to life imprisonment.

The prosecutrix, an 11-year-old girl, was grabbed from behind by a group of five youths as she was walking alone a half block from her home about 6:30 p. m. on February 4, 1958. One of the boys was the defendant Ronald Valentine. They dragged her into an alley and down some steps onto a concrete areaway at the entrance to a basement. Her clothes were ripped off and James Clay, the oldest and the largest of the youths, attempted to rape her. He had difficulty entering her and he brutally tore her vulva and vagina with his fingers to enlarge them. Clay then raped her while Valentine, who was the next oldest, held her mouth and acted as a lookout. He also slapped her face when she screamed. After Clay finished another boy replaced him. The prosecutrix testified that this was Valentine but he denied it; another member of the

gang, in a statement made to the police, admitted he was the second boy. Clay had started a second attack when one of the boys shouted that somebody was coming and they all ran down the alley. The little girl put on her shoes and coat and, carrying her blood-stained garments, returned home to her mother. She was taken to a hospital that evening. The lacerations in her vagina and perineum required surgery and she was in the hospital six days.

The defendant prosecutes this writ of error to reverse his conviction and contends (1) that his conviction was unconstitutional because he was convicted and sentenced not only for rape but for a crime for which he was not indicted: accessory after the fact to rape; (2) that if guilty at all he was guilty only as an accessory before the fact, and the failure of the indictment to charge him as such violated his constitutional right to be informed of the nature and cause of the accusation against him, and (3) that the evidence was insufficient to sustain his conviction either as a principal or as an accessory before the fact. He also contends that his punishment is excessive and that if his conviction is not reversed his sentence should be reduced.

The defendant's application for a writ or error was directed to the Supreme Court. Briefs were filed and oral argument was heard in that court and the constitutional questions raised in points (1) and (2) were fully presented. The court then transferred the cause here. The transfer order stated that the court had examined the briefs, the argument and the record and found that it had no jurisdiction of the case on direct appeal.

The constitutional arguments have been repeated here and an issue has arisen between the parties as to this court's power to adjudicate constitutional ques-

tions. The defendant takes the position that since January 1, 1964, the effective date of the new Judicial Article, the Appellate Court has complete authority to determine constitutional questions. He points to section 1 of article VI of our State constitution which states: "The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts" and maintains that under this provision all three courts have jurisdiction to hear and determine all matters cognizable in Illinois jurisprudence and that there is no limitation on the power given the Appellate Court. The argument proceeds that although the constitutional questions raised in this case were fully presented to the Supreme Court in the briefs and by oral argument, the court did not rule on the merits of the questions, and that if this court does not do so it would be an effective denial of appellate review and a denial of due process.

The position of the State is that the order of the Supreme Court, entered from the bench after the court had reviewed the briefs and heard oral argument, indicates plainly that there is no constitutional, or substantial constitutional question present in the instant case. The State further argues that under the present posture of the law the Appellate Court does not have appellate jurisdiction of constitutional questions in any case.

This court has only such jurisdiction as is conferred upon it by law and it is provided that the Appellate Court shall have jurisdiction of all cases other than those appealable directly to the Supreme Court. Constitution of Illinois, art VI, sec 7. A direct appeal to the Supreme Court shall be as a matter of right only, among others, in cases involving a question arising under the Constitution of the United States or of this state. Constitution of Illinois, art VI, sec 5(b). It is provided that the taking of an appeal either to the Supreme or the Appellate Court shall not be

deemed a waiver of the right to present any issue in the appropriate court and that a matter decided by either court shall not be subject to collateral attack on the ground that it should have been decided by the other. Supreme Court rule 28–1D. Further, an appeal taken to either the Supreme or Appellate Court, if wrongly appealed, may be transferred to the proper court. Supreme Court rule 47; Ill Rev Stats, 1963, c 110, sec 86.

The jurisdictional dispute between the parties has been engendered by the transfer to this court of cases which heretofore have been retained by the Supreme Court, cases in which constitutional questions are basic to the appeal. Zoning cases, where the fundamental issues are always whether there has been a violation of due process and whether a property owner is being unlawfully deprived of his constitutional right to use his property as he sees fit, and criminal cases, where the only issue is the constitutional right of a citizen to be immune from an unreasonable search of his person and seizure of his property, are being transferred to this court. First Nat. Bank & Trust Co. v. City of Evanston, 30 Ill2d 479, 197 NE2d 705; Colvin v. Village of Skokie, 54 Ill App2d 22, 203 NE2d 457; Maywood Proviso State Bank v. Village of Berkeley, 55 Ill App2d 84, 204 NE2d 144; People v. DeFilippis, 54 Ill App2d 137, 203 NE2d 627; People v. Tadlock, 59 Ill App2d 481, 208 NE2d 100; People v. Lafin, 59 Ill App2d 489, 208 NE2d 105. Previously in cases of this kind, the Supreme Court has held that the constitutional issues warranted direct appeal and required the retention of jurisdiction. LaSalle Nat. Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65; People v. Watkins, 19 Ill2d 11, 166 NE2d 433; People v. Williams, 27 Ill2d 542, 190 NE2d 303.

One result of these transfers is that not only zoning cases and criminal cases involving the issue of search and seizure, but cases involving other constitutional

issues such as coerced confessions, the denial of due process, obscene literature and the right of free speech are now being appealed directly to the Appellate Court. By selecting this court as the appropriate constitutional forum the appellants are bypassing section 5(b) of article VI of our State constitution, and Supreme Court rule 28–1A which states that "Appeals from the final judgments of circuit courts shall be taken directly to the Supreme Court: . . . (b) in cases involving a question arising under the constitution of the United States or of this State. . . ." The explanation given by appellants for these appeals is that they are perplexed by the Supreme Court's findings that it has no jurisdiction on direct appeal of cases which rule 28–1A says must be appealed to that court, and that they are puzzled by the abrupt transmutation of substantial constitutional issues into unsubstantial ones.

 Although the Supreme Court found in the present case that it did not have jurisdiction on direct appeal, it cannot be assumed that the court denied the constitutional right of direct appeal in a case where the right was appropriately invoked. Furthermore, it cannot be assumed that by transferring the present case here the court denied the defendant a forum in which to have heard his claim that his constitutional rights have been infringed. On the other hand, it cannot be assumed because the Supreme Court has transferred cases involving certain constitutional questions to this court that it is also conferring upon this court the power to decide all constitutional questions. Rather, the present policy of the Supreme Court is an extension into new fields of established principles, principles firmly imbedded in our law through a long line of cases. The Supreme Court has repeatedly held that it will not consider or determine constitutional questions which are not essential to a decision of the case.

Rittenhouse & Embree Co. v. F. E. Brown & Co., 254 Ill 549, 98 NE 971; People v. Adams, 351 Ill 79, 183 NE 810; People v. Jarecki, 372 Ill 208, 23 NE2d 60; Durkin v. Hey, 376 Ill 292, 33 NE2d 463; People v. Metcoff, 392 Ill 418, 64 NE2d 867; that it will not entertain an appeal on the ground that a constitutional question is involved unless it appears from the record that a fairly debatable constitutional question was urged in the trial court, was decided by that court, was preserved in the record and is assigned as error, People v. Williams, 3 Ill2d 79, 119 NE2d 731; Liberty Nat. Bank of Chicago v. Metrick, 410 Ill 429, 102 NE2d 308; People v. Rohde, 403 Ill 41, 85 NE2d 24, cert denied 70 S Ct 43, 338 US 833, 94 L Ed 508, rehearing denied 70 S Ct 338, 338 US 940, 94 L Ed 580; and, importantly, that it will not entertain an appeal or writ of error for the purpose of passing on constitutional questions long settled, White v. Youngblood, 367 Ill 632, 12 NE 2d 650; People v. Blenz, 317 Ill 639, 148 NE 249. It does not follow that the constitutional issues are genuine or substantial because an attorney on appeal may base his case on a constitutional framework and clothe it with constitutional raiment. People v. Turner, 31 Ill 2d 197, 201 NE2d 415; People v. Arbuckle, 31 Ill 2d 163, 201 NE2d 102; People v. Estep, 409 Ill 125, 97 NE2d 823, cert denied, 345 US 970, rehearing denied 346 US 842; Mandrake v. Schlaeger, 393 Ill 610, 66 NE2d 858; City of Watseka v. Blatt, 381 Ill 276, 46 NE2d 374.

█ When the Supreme Court, which has sole jurisdiction of questions arising under the Federal and State constitutions and which has by rule provided that appeals involving such questions shall be taken directly to that court, declares that it has no jurisdiction of a particular case, we must conclude that the court determined either (a) that there are no constitutional questions in the case because they were not

raised, passed upon or preserved in the trial court, or, (b) that the questions are spurious or (c) that they are not material to the ultimate disposition of the appeal, or (d) that they are neither fairly debatable nor substantial. By the latter determination we understand that in the court's opinion the questions, insofar as they and the constitutional provisions invoked relate to the facts of the particular case, have been resolved so definitely that the court believes it is needless to do so again. Sometimes, however, there may be room for a difference of opinion as to what are well-settled questions. Witness, for example, the non-routine search and seizure problem in the transferred case of People v. DeFilippis, 54 Ill App2d 137, 203 NE 2d 627.

We have no desire to enlarge our jurisdiction. However, because of the transferred cases and because of the resulting direct appeals to our court on like questions (which would be futile to transfer to the Supreme Court when in all probability they would be returned to us), we are, perforce, either to a degree or wholly, compelled to pass upon constitutional questions. This necessitates a modification of a prior rule, which was that if a case in which constitutional questions were raised was transferred to this court, it was presumed that the Supreme Court had determined that the constitutional questions were not genuine or that the questions were not material to the disposition of the appeal. City of Chicago v. Berg, 48 Ill App2d 251, 199 NE2d 49; City of Chicago v. Campbell, 27 Ill App2d 456, 170 NE2d 19; Schyman v. Department of Registration & Education, 9 Ill App2d 504, 133 NE2d 551, cert denied, 352 US 1001. There now must be an extension of this rule because of the possible alternative presumption that the constitutional questions are deemed well settled by the prior decisions of the court.

■ We agree with the defendant that we must now review the entire transferred case including the constitutional issues. We also agree that the Supreme Court's finding in this case (that it had no jurisdiction on direct appeal) did not mean that there were no constitutional issues in the case nor that all of them were not pertinent to the appeal. However, we disagree with the defendant that there is no limitation on the power of this court to hear and determine constitutional questions; and we disagree with the State that under the present posture of the law this court does not have appellate jurisdiction over any constitutional question, no matter how such question is raised or brought to our attention. There is a growing middle ground not too well defined at the present time but which, with the many explorations that are now occurring, will soon be marked with well-blazed trails.

The continuity of the Supreme Court's approach to constitutional questions is exemplified by the two constitutional issues raised in this appeal. We find that one is no longer in the case and that the other has been well settled under the same facts and in the same context.

■■ The defendant's first point is that his constitutional rights were violated because he was sentenced for a crime for which he was not indicted. The defendant was indicted for rape but the record stated that he was found guilty and sentenced not only for the crime of rape but as an accessory after the fact to rape. It is fundamental that a person cannot be found guilty of a crime unless he has been charged with that crime. An indictment charging a defendant as a principal will not sustain a conviction as an accessory after the fact. It subsequently came to light that the recital of conviction was an error and was incorporated into the record due to a mistake by a clerk of the court. The error came about in this way: Charles Duncan, the

employer of Valentine and Clay, learned of their crime but concealed it. He heard them talk about their guilt and about a glove and a knife-holder they left at the scene of the crime. He saw them burn a glove which was the mate of the one that had been dropped and saw them throw a knife into the stove at his office. Duncan was included in the same indictment with Valentine and Clay and was charged with being an accessory after the fact. He was granted a separate trial and testified for the State against Valentine and Clay. In passing sentence on Valentine the court observed that the evidence proved that he was guilty both as a principal and as an accessory. In using the word "accessory" the court obviously meant that Valentine was guilty as an accessory before the fact. The clerk apparently misunderstood the court and made entries in the common law record that Valentine was found guilty of rape and accessory after the fact to rape in manner and form as charged in the indictment and was sentenced to confinement in the penitentiary for life for the crime of rape and accessory after the fact to rape.

The misprision of the clerk was later rectified upon the motion of the State's Attorney. This was done after the defendant's first brief was filed in this appeal. Valentine now argues that the memorials used by the trial judge to correct the record were insufficient. The trial judge held a hearing, examined his own minutes of the trial, the court record and the transcript of the proceedings, and ordered the record corrected to conform to the truth: that the defendant was found guilty of and sentenced for rape only. A record may be amended after the term in which it was made if the amendment is based on an adequate memorial. It has been held that a memorandum from the records or quasi-records of the court, an entry in a book required by law to be kept, papers on file in a

case, the judge's minutes or the transcript of the proceedings (if the transcript is part of the record and has been approved by the trial judge in apt time) may be used as memorials. Oskvarek v. Richter, 32 Ill App2d 438, 178 NE2d 209; People v. Glenn, 25 Ill2d 82, 182 NE2d 670; People v. Michael, 23 Ill2d 338, 178 NE2d 309; Chicago M. & St. P. Ry. Co. v. Walsh, 150 Ill 607, 37 NE 1001. We have examined the memorials used by the trial judge in the present case and find that they were sufficient to amend the record so that it would accurately set forth the judgment and sentence. The issue is, therefore, no longer in the case.

The second constitutional issue raised by the defendant is that the failure of the indictment to charge him as an accessory before the fact violated his constitutional right to know the nature and cause of the charge against him. The indictment charged him with rape but he argues that the evidence showed that at most he was only an accessory before the fact, that he should have been indicted as an accessory and that his alleged acts of aiding and abetting should have been detailed in the indictment. This argument has been made many times over the years and has been consistently answered. It was made in Baxter v. The People, 3 Gilman 368, 8 Ill 368 (1846) where the question was "whether the proof that the prisoner was accessory before the fact will sustain an indictment against him as principal." The court stated that the distinction between accessories before the fact and principals was abolished by the statute, that the legislature had provided that "he who not being present hath advised or encouraged the giving of the blow, hath given the blow as much as if he had stood by and encouraged it, or even had struck it with his own hands. . . . All are principals and as such, should be indicted and punished. Indeed they must be indicted as principals or

351

not at all, for they are declared by the Act to be principals."

From 1846 up to the present time the cases have uniformly held that an accessory before the fact can be indicted and tried as principal. Baxter v. The People, supra; Coates v. The People, 72 Ill 303 (1874); Usselton v. People, 149 Ill 612, 36 NE 952 (1894); People v. Marx, 291 Ill 40, 125 NE 719 (1919); People v. Bogue, 319 Ill 294, 149 NE 750 (1925); People v. Mosher, 403 Ill 112, 85 NE2d 658 (1949); People v. Bates, 16 Ill2d 290, 157 NE2d 68 (1959); People v. Ruscitti, 27 Ill2d 545, 190 NE2d 314 (1963). The statute on accessories at the time these cases were decided was the same as the statute in effect when the defendant was indicted and tried:

> "An accessory is he who stands by, and aids, abets, or assists, or who not being present, aiding, abetting or assisting hath advised, encouraged, aided or abetted the perpetration of the crime. He who thus aids, abets, assists, advises or encourages, shall be considered as principal, and punished accordingly." Sec 2, division II, Criminal Code (Ill Rev Stats 1957, c 38, par 582).

The same legal provisions have been incorporated in the Criminal Code of 1961, although expressed in different terminology:

> "A person is legally accountable for the conduct of another when . . . (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Sec 5–2(c), Criminal Code (Ill Rev Stats, 1961, c 38, par 5–2(c)).

The change in language has not changed the effect of the statute. People v. Touhy, 31 Ill2d 236, 201 NE2d 425 (1964).

The defendant's court-appointed counsel acknowledge the present status of the law, but earnestly argue that the time has come to reconsider this issue and they urge that "the legal fiction" of charging a person as principal when he is really an accessory be abandoned.

■ To do this would necessitate overturning the law as pronounced by the Supreme Court on numerous occasions. Even if our opinion differed, which it does not, with the many decisions which hold that indicting an accessory before the fact as a principal does not abridge his constitutional right to be informed of the nature and cause of the accusation made against him, it would be fatuous for us to disagree in a case which is before us only because the Supreme Court must have felt, in the light of its past decisions covering the precise point, that the issue is not debatable. If that court thought that its decisions should be reviewed it surely would have retained jurisdiction of this appeal.

The defendant next argues that the evidence is insufficient to sustain his conviction either as a principal or as an accessory before the fact, because as to the former the girl's testimony was not clear and convincing and that as to the latter the evidence does not show beyond a reasonable doubt that he affirmatively aided or abetted the perpetration of the crime. The trial judge in pronouncing sentence on Valentine stated that he was satisfied from the evidence that the defendant was guilty of forcible rape both as a principal and as an accessory. After scrutinizing the evidence we are of the opinion that both conclusions were justified.

The defendant does not deny that the prosecutrix was raped and that he was present at the time, but he does deny that he raped her himself. The prosecutrix, however, identified Valentine after his arrest and at the trial as her second assailant. Her testimony was clear, convincing and unshaken and the court, as the trier of facts who heard and believed her, had ample reason to find Valentine guilty as a principal. The mere fact that the evidence was conflicting does not justify the conclusion that the trial court was in error in finding Valentine guilty as principal. People v. Evans, 25 Ill2d 194, 184 NE2d 836; People v. DeFrates, 395 Ill 439, 70 NE2d 591.

The evidence taken in the light most favorable to the defendant establishes his guilt as an accessory beyond all reasonable doubt. By his own admission he held his hand over the child's mouth and slapped her face as one of his companions raped her; by his own admission he acted as a lookout while she was being assaulted by two other boys. The defendant was also guilty as a fellow-conspirator because he participated in a common plan to waylay and attack the victim. On the afternoon of February 4, 1958, all the boys left their place of employment and attended a movie. On the way to the movie Clay showed Valentine a knife and said he would "get a girl." While the boys were together there was further discussion about "getting a girl." As they walked along the street after leaving the theatre they were stopped and questioned by policemen. They told the policemen they were going home. After the officers departed Valentine said that it would be better if they did go home, but they continued on their way and he made no effort to leave their company. They spotted one girl but she entered a store before they reached her, so they continued in their quest until they chanced

upon the unfortunate prosecutrix and seized her. Inasmuch as the group of boys had a common design to commit an unlawful act and were working in concert with one another, the act of any member of the group in furtherance of the common purpose was the act of all. The conduct of the defendant in assenting to the common plan and in taking part in its accomplishment would make him guilty of the crime of rape even though he did not hold the girl, slap her or act as a lookout for others. People v. Cole, 30 Ill2d 375, 196 NE2d 691; People v. Kolep, 29 Ill2d 116, 193 NE2d 753; People v. Thicksten, 14 Ill2d 132, 150 NE2d 813.

The defendant requests a reduction in the punishment imposed by the trial court. He points out that Clay was the principal aggressor and complains that he received the same punishment as Clay. The power of Illinois reviewing courts to reduce sentences is new (Ill Rev Stats 1963, c 38, § 121–9(b)(4)) and the Illinois cases are few and the early decisions vary. Sentences have been reduced where there were unusual circumstances (People v. Campbell, 49 Ill App2d 269, 200 NE2d 72) but they also have been reduced without extensive explanation (People v. Shannon, 56 Ill App2d 154, 206 NE2d 106; People v. Cage, 58 Ill App2d 262, 207 NE2d 732). Contrariwise, sentences have been upheld in People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503; People v. Mitchell, 57 Ill App2d 238, 205 NE2d 655; People v. Millet, 60 Ill App2d 22, 208 NE2d 670.

We believe that the power to reduce sentences should be used with caution and that a sentence imposed by the trial judge, who sees the defendant and is in a far better. position to appraise him and to evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there are substantial reasons for doing so. The penalty

decided upon by the trial court, if within statutory limits, should not be changed merely because of judicial clemency or just because the reviewing court would have imposed a different one if it had been in the trial court's position.

■ Although Valentine's acts were not as vicious as Clay's and although Clay was 18 and Valentine 17 years of age, Valentine's participation in the gang rape was not minimal; he was a leading participant in a crime described in his own supplemental brief as "a particularly brutal rape of an eleven year old girl." The fact that he received the same sentence as Clay does not transgress his rights or indicate discrimination against him. People v. Marose, 10 Ill2d 340, 139 NE2d 735. In the eyes of the law he is as guilty as Clay. The sentence received by him was within the scope of the punishment fixed by statute and was commensurate with the enormity of his offense.

The judgment of the Criminal Court is affirmed.

Affirmed.

SULLIVAN and SCHWARTZ, JJ., concur.