(No. 39191.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN DE FILIPPIS *et al.,* Appellants.

*Opinion filed Jan. 25, 1966.—Rehearing denied March 23, 1966.*

UNDERWOOD, J., dissenting.

R. EUGENE PINCHAM and CHARLES B. EVINS, both of Chicago, for appellants.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This appeal, here on leave granted to review the decision of the appellate court in *People* v. *DeFilippis,* 54 Ill. App. 2d 137, presents the question, answered in the affirmative by the appellate court, of whether defendants charged with the crimes of burglary and theft must establish a possessory interest either in the premises searched or the property seized, in order to secure the exclusion of evidence allegedly obtained in violation of constitutional rights against unreasonable search and seizure. The appellate court reversed the order of the circuit court of Cook County allowing defendants' motions to suppress certain tangible evidence and remanded the cause with directions to deny the motions.

Historical background helpful to a narrowing of the issue presented may begin with the observation that neither the fourth amendment to the Federal constitution, nor section 6 of article II of the Illinois constitution, which prohibit unreasonable searches and seizures, bars the admission of evidence obtained in violation of their terms. Because of this, and to remove the temptation to ignore the constitutional re-

straints on search and seizure, the Federal courts formulated the rule, to which this court has subscribed, that evidence obtained in violation of the rights protected cannot be admitted against the person whose rights were infringed. (See: *Weeks* v. *United States*, 232 U.S. 383, 58 L. ed. 652; *People* v. *Castree*, 311 Ill. 392.) The reason for the exclusionary rule, as stated in *People* v. *Perry*, 1 Ill.2d 482, 486, is "that if evidence seized in violation of one's constitutional rights were permitted to be introduced in evidence against him, he would, in effect, be compelled to give evidence against himself, and his privilege against self-incrimination guaranteed by the fifth amendment to the United States constitution and section 10 of article II of the Illinois constitution would be violated." And because of its source in the constitutional privilege against self-incrimination, the courts, in applying the rule, held that it could be availed of only by one whose constitutional rights had, in fact, been invaded by the illegal search and seizure. That is to say that unless the illegal search and seizure infringed upon an accused's own personal rights he was held to have no standing to prevent the admission of evidence unlawfully obtained. *Goldstein* v. *United States*, 316 U.S. 114, 86 L. ed. 1312; *People* v. *Perry*, 1 Ill.2d 482.

Accordingly, the practice developed that for an accused to have "standing" to invoke the protection of the fourth amendment and its counterpart in our own constitution, it was essential that he assert and prove some possessory or proprietary interest either in the property seized or the premises searched. (*People* v. *Kelley*, 23 Ill.2d 193; *United States* v. *Pisano*, (7th cir.) 193 F.2d 361.) Consistently, where an accused neither claimed ownership nor demanded the return of the property alleged to have been illegally seized, it was held that he could not complain of its seizure or use in evidence against him. *People* v. *Perroni*, 14 Ill.2d 581; *United States* v. *Eversole*, (7th cir.) 209 F. 2d 766.

Despite the beneficent purpose and laudable aim of the

exclusionary rule, an accused who objected to the introduction of evidence on the ground that it was obtained by an illegal search and seizure was, in the case of some crimes, faced with a dilemma. On the one hand, in order to establish his standing to raise the objection, he had to show an interest in the property searched or seized; on the other hand, by so doing, he would establish an element of the offense with which he was charged, for example, where the offense involved unlawful possession of the very property the prosecution sought to introduce in evidence. In short, to establish standing, such an accused was forced to put his head into a noose by admitting possession, and in availing himself of the constitutional protection against unreasonable search and seizure was forced to sacrifice his protection against self-incrimination.

Judicial relief from the dilemma came with the landmark decision of *Jones* v. *United States,* 362 U.S. 257, 4 L. ed. 2d 697, which rendered obsolete much of the prior case law. And while the breadth and result of its holding is an issue in this case, it settled conclusively that, as regards criminal prosecutions for unlawful possession of the property seized, an accused does not lack standing to object to the constitutionality of the search and seizure merely because he fails to allege the requisite proprietary or possessory interest, the *ratio decidendi* being that in such situation the possession on the basis of which it is sought to convict is sufficient to give him standing to make the objection. *Jones* v. *United States,* 362 U.S. at 263-264, 4 L. ed. 2d at 704.

The foregoing was the climate of judicial view on the matter of standing when, in the instant case, the defendants, who were charged with burglary and theft, filed motions to suppress evidence alleged to have been illegally obtained at the time of their arrest. As may be seen in greater detail in the opinion of the appellate court, (54 Ill. App. 2d 137,) those motions did not allege a proprietary or possessory in-

terest in the articles seized. And although sufficient standing on the part of defendants appears to have been assumed by the trial court, which allowed the motions, the appellate court reversed the order of the trial court on the ground that defendants had failed by their evidence to show a "right to possession" in the articles seized, or "their right to be on the premises" searched. (54 Ill. App. 2d at 141.) In arriving at its conclusion, the appellate court was cognizant of the *Jones* decision, but on the basis of *United States* v. *Konigsberg,* (3rd cir., 1964,) 336 F.2d 844, construed *Jones* as being limited to situations where possession is an element of the offense charged and is in itself sufficient proof of guilt to convict. Conversely, the appellate court construed *Jones* as having no application where possession is not an element of the crime charged, (as in burglary or theft,) and where proof of possession merely raises a presumption of guilt.

There is, of course, no question but that the People in the present case intended to rely upon the defendants' possession of the property as evidence of the defendants' commission of the alleged offenses. According to the appellate court's reasoning a defendant's standing to make a motion to suppress evidence seized from him is determined by the nature of the charge which the prosecutor brings against the defendant. Although the search and seizure in the present case was made by Federal agents, law enforcement officials decided to prosecute on State rather than Federal charges, presumably mindful of the distinctions noted in the *Konigsberg* case. We do not believe that the defendants' constitutional rights are governed by the charges brought against them, particularly when the prosecution has a choice of charges. In *Jones* the defendant was not charged with the unlawful possession of the narcotic drugs seized in the search. Neither statute under which he was convicted prohibited the possession of narcotic drugs. Therefore, neither in *Jones* nor in this case were the defend-

ants charged with the possession of the articles seized and sought to have been suppressed as evidence. Also inherent in the appellate court's holding is the proposition that the nature of the articles seized as a result of the search will determine the constitutional validity of the search. In our opinion the fruits of the search cannot determine its constitutional validity and should not govern a defendant's standing to make a motion to suppress evidence.

Aside from the *Jones* case it would appear that the defendants had standing to make the motion to suppress under the authority of *People* v. *Colonna,* 140 Cal. App. 2d 705, 295 P.2d 490, where the court stated:

"Thus, the rule of the lower federal courts is based on the theory that the evidence is excluded to provide a remedy for a wrong done to the defendant, * * *. In adopting the exclusionary rule, however, this court recognized that it could not be justified on that theory, and based its decision on the ground that 'other remedies have completely failed to secure compliance with the constitutional provisions on the part of the police officers with the attendant result that the courts under the old rule have been constantly required to participate in, and in effect condone, the lawless activity of law enforcing officers.'

"This result occurs whenever the government is allowed to profit by its own wrong by basing a conviction on illegally obtained evidence, and if law enforcement officers are allowed to evade the exclusionary rule by obtaining evidence in violation of the rights of third parties, its deterrent effect is to that extent nullified. Moreover, such a remedy virtually invites law enforcement officers to violate the rights of third parties and to trade the escape of a criminal whose rights are violated for the conviction of others by the use of the evidence illegally obtained against them.

"The United States Supreme Court has correctly recognized that the purpose of the exclusionary rule is not to provide redress or punishment for a past wrong, but to deter

lawless enforcement of the law. The government cannot violate the fourth amendment and use the fruits of such unlawful conduct to secure a conviction, * * *. These methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men * * *. His right to object to the use of the evidence must rest not on a violation of his own constitutional rights, but on the ground that the government must not be allowed to profit by its own wrong and thus encourage the lawless enforcement of the law.

"Since all the reasons that compel us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guaranties, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights."

When viewed in its broader aspects, we do not believe that the *Jones* decision is, or was intended to be, restricted to the narrow confines delineated by our appellate court. Rather, we see in the logic of that decision a requirement that the conventional concepts of standing must give way whenever it is necessary to prevent unfairness, and to secure to an accused *both* his constitutional protection against unlawful search and seizure and his protection against self-incrimination. Speaking on a more specific plane, we do not see in *Jones* a proscription that possession must be an element of the crime charged, but interpret its holding as applying whenever proof of possession is sufficient to convict. But even if we are wrong in these things, there is nothing which inhibits us from extending the principle of *Jones* in such a way, and to such an extent, as to insure that the prohibition of our own constitution against unreasonable search and seizure may be made fully effective, and that its protection is not unfairly denied.

The three-count indictment returned against the defendants in this case charged them with burglary, (Ill. Rev.

Stat. 1961, chap. 38, par. 19—1,) with grand theft, or larceny, (Ill. Rev. Stat. 1961, chap. 38, par. 16—1(a),) and with receiving stolen goods, or as the statute now describes it, with theft accomplished by obtaining "control over stolen property knowing the property to have been stolen by another." (Ill. Rev. Stat. 1961, chap. 38, par. 16—1(d).) It has long been settled in this jurisdiction that the recent and unexplained possession of stolen goods is sufficient to convict of larceny, or to paraphrase the language employed by Mr. Justice Frankfurter in the *Jones* decision, (362 U.S. at 258, 4 L. ed. 2d at 701,) it has long been established by the decisions of this court that the "statutory provisions under which defendants were prosecuted permit conviction upon proof of the defendant's possession of the stolen goods." (*E.g. People* v. *Mallett,* 30 Ill.2d 136; *People* v. *Reynolds,* 27 Ill.2d 523; *People* v. *Litberg,* 413 Ill. 132; *People* v. *Moore,* 362 Ill. 192; *People* v. *Norris,* 362 Ill. 492; *People* v. *Sampson,* 337 Ill. 643.) Concededly, proof of recent and unexplained possession of stolen goods is not in itself sufficient to convict one of the crime of receiving stolen goods, (*People* v. *Grizzle,* 381 Ill. 278; *People* v. *Klapperich,* 370 Ill. 588,) but, at the same time, our decisions establish that possession, actual, constructive, or potential, is an element of the crime which must be proved in order to convict. *People* v. *Piszczek,* 404 Ill. 465; *People* v. *Poncher,* 358 Ill. 73; *People* v. *Jurek,* 357 Ill. 626.

Under these circumstances, the dilemma of the defendants here is no different from the plight of the accused which motivated the decision in the *Jones* case, and the use of illegal evidence by the prosecution is no less damaging to constitutional rights. To require defendants to allege and prove a possessory interest in the property seized in order to avail themselves of the protection against unlawful search and seizure, is to require them to sacrifice their protection against self-incrimination, and to compel them to admit that which could be sufficient to convict in the case of the crimes

of burglary and grand theft, and which would establish an essential element of the crime of receiving, or controlling, stolen goods. In each case, defendants' conviction may flow, in whole or in part, from their possession of the stolen goods, and we believe the situation of this case was precisely what the court contemplated in *Jones* when it said that it was not consonant with the amenities of the administration of criminal justice to subject an accused "to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation." (362 U.S. at 263, 4 L. ed. 2d at 704.) Accordingly, and in line with *Jones*, we hold that the possession on the basis of which defendants' convictions could be obtained and enhanced was sufficient to give each of them standing to move for the suppression of the evidence alleged to have been unlawfully seized. This being so, the decision of the appellate court must be reversed.

While the conclusion we have reached makes it unnecessary to determine the matter of whether defendant De Filippis had a proprietary interest in the premises searched sufficient to give him standing, there remains the question, on which the order of the trial court turned, as to whether the search without a warrant was reasonable in this case.

A short summary of the facts essential to decision on this issue shows that sometime before September 26, 1962, an informant, who according to the People, "had proved to be reliable in the past," communicated to Federal agents that stolen goods were stored in a garage at the rear of a residential property owned by De Filippis. However, it is to be noted that of the two Federal agents involved, one testifying on cross-examination as to the reliability of the informant did not state that the informant was a man from whom he had received reliable information in the past but said in response to the question of whether the man was a reliable informant that the informant *proved* to be reliable;

the other agent when asked about the reliability of the informant said he didn't know. Specifically, the agents were informed that a quantity of men's shirts, stolen from an interstate shipment consigned to Sears Roebuck & Company, was in the garage, along with merchandise stolen from a warehouse of Carson Pirie Scott & Company. Upon receipt of such information the agents acquainted themselves with the nature and description of the merchandise taken from the warehouse, even down to the distinctive markings on the cartons, and placed the garage under a surveillance which extended through September 26, 27 and 28.

On the day last named, agents watching through field glasses saw boxes being loaded on a truck which had backed up to the garage. Upon moving closer, two of the agents purportedly noticed the distinctive markings on a carton being loaded on the truck by two of the defendants, and also were able to see on the floor of the garage several stock or location cards, bearing the name of Carson Pirie Scott & Company. Based upon these facts, the People argue that probable cause for the arrest of defendants existed, and that the subsequent search and seizure, having been made incident to a lawful arrest, were likewise valid and reasonable.

The record discloses, however, a violent dispute in the evidence as to whether the agents could in fact see the things they claimed to have seen from their positions outside the garage. If they could not, and if they did not gain their knowledge until after a wrongful entry into the protected premises, it is clear that the subsequent search and seizure cannot be deemed to have been incident to a lawful arrest. (*Cf. Johnson* v. *United States,* 333 U.S. 10, 92 L. ed. 436; *McDonald* v. *United States,* 335 U.S. 451, 93 L. ed. 153; *People* v. *Bankhead,* 27 Ill.2d 18; *People* v. *Parren,* 24 Ill.2d 572.) The trial court, whose function it was to determine the credibility of the witnesses and the weight to be afforded their testimony, resolved the conflicts

in favor of the defendants, and it has been frequently stated that a court of review is justified in overturning the determination of the trial court only where its judgment is found to rest on doubtful, improbable, unsatisfactory or clearly insufficient evidence. (*People* v. *Peak,* 29 Ill.2d 343; *People* v. *West,* 15 Ill.2d 171.) A close examination of the testimony and the photographic evidence which supplemented it disclose no reason why we should substitute our judgment for that of the trial court.

Accordingly, for the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

Mr. JUSTICE UNDERWOOD, dissenting:

The question as to whether illegally seized evidence should be suppressed at all is one the merits of which had been so debatable that only about one-half of the States (see 8 Wigmore on Evidence, 3rd ed., par. 2183, p. 8) had chosen to exclude it prior to *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, and only California, so far as my research has indicated, heretofore has totally abolished the requirement that one seeking suppression must first establish violation of *his* constitutional rights.

The reasons underlying the exclusionary rule and "standing" requirements are well set forth in the majority opinion and will not be repeated here. That opinion also recognizes the consistently maintained rule in this State that only infringement of the accused's own right to be free of unconstitutional searches and seizures enables him to complain, and that unless he shows a violation of his constitutional guaranty he may not suppress evidence even though some other persons' constitutional rights may have been violated by the seizure. Such showing, heretofore required, was customarily made by alleging a proprietary or posses-

sory interest in the premises searched or property seized. The sole exception to this rule related to those instances where the admission by the accused of the required interest would be sufficient to convict him of the crime with which he was charged. E.g. *People* v. *Mayo,* 19 Ill.2d 136.

While not so stated, the inevitable effect of the majority opinion will be elimination of the rule by expanding the exception. The purport of the holding is clear: If admission of an interest in the premises searched or property seized would be self-incriminatory, no such interest need be alleged. Of course, evidence sought to be suppressed is always incriminatory or the defendant would not seek its suppression.

Justification for this holding is sought in *Jones* v. *United States,* 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697, but it is to me clear that the Supreme Court there regarded the case before them as one in which the possession of the narcotics, *per se* would be sufficient to convict, for the second paragraph of the opinion states: "Both statutory provisions under which petitioner was prosecuted permit conviction upon proof of the defendant's possession of narcotics." That the court had no intention of abolishing the "standing" requirement is manifest in its language (U.S. p. 261): "Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy." That court then held it unnecessary, as this court did in *Mayo,* for the defendant to allege or establish a possessory interest. This is the construction heretofore given *Jones* by us and in *United States* v. *Konigsberg,* (3rd cir.) 336 F.2d 844, *cert.* den. 379 U.S. 933, 85 S. Ct. 334, 13 L. Ed. 2d 344.

But this is vastly different from abolishing the rule completely which is accomplished by eliminating the "standing" requirement here. *Jones* does not require doing so.

We expressly held that it did not in *People* v. *Kelley,* 23 Ill.2d 193, *cert.* den. 370 U.S. 928, 8 L. Ed. 2d 507, 82 S. Ct. 1570, and there required a defendant charged with armed robbery to allege a possessory interest in a watch, found in defendant's pocket, before he could raise the question of an illegal search even though the watch was one taken from the victim of the robbery and its presence upon defendant's person very shortly thereafter was even more persuasive evidence of guilt than the possession here. We there considered *Jones* to be inapplicable because the watch was only evidence of defendant's guilt and its possession alone insufficient to convict of armed robbery. This is precisely the situation here, for proof that defendants were in possession of the stolen property does not convict them of burglary without additional proof of the essential entering with intent to commit a felony. Possession of the property taken is not even an essential element of burglary—proof of such possession is simply some evidence of guilt.

The rule requiring a defendant to establish the manner in which *his* constitutional rights have been violated before permitting him to challenge the validity of a search and seizure has been and is now largely followed in both Federal and State courts ( see 78 A.L.R. 2d 246) except for those instances, earlier noted, where such showing would suffice to convict him. It has been, until now, the law of this State. That *Jones* compels no change was decided by us in *Kelley,* and we have twice since approved the *Kelley* rule in *People* v. *Pitts,* 26 Ill.2d 395, 398-9, and *People* v. *French,* 33 Ill.2d 146, 149-50, decided only last September. The facts of this case disclose no such unconscionable conduct by law enforcement officers as would justify reconsideration of these decisions. The language of the California District Court of Appeals (*People* v. *Colonna,* 140 Cal. App. 2d 705, 295 P.2d 490), quoted at length in the majority opinion, first appeared in *People* v. *Martin,* 45 Cal. 2d 755, 290 P.2d 855, and both of these cases had been decided some 5 and 6

years, respectively, prior to our decisions in *Kelley* and the cases reaffirming it. I would think the California cases hardly persuasive of a need for change now.

There is, in my judgment, no compelling reason presented for the substantial departure from existing law accomplished by the majority opinion, nor do I deem it desirable to eliminate what I consider to be a salutary requirement conducive to the preservation of an orderly society.

Accordingly, I would affirm the appellate court.